**\*\*NOT FOR PUBLICATION\*\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| KELECHI GERALD NWOZUZU, | ) ) ) | Civ. No.: 12-3963 |
| Petitioner, | ) ) | |
| v. | ) ) | OPINION |
| JANET NAPOLITANO, ERIC H. HOLDER, JR., JOHN T. MORTON, CHRISTOPHER SHANAHAN, and BRIAN ELWOOD, | ) ) ) ) ) ) | |
| Respondents. | ) ) | |

WOLFSON, United States District Judge:

      Kelechi Gerald Nwozuzu, confined at Monmouth County Correctional Institution in Freehold, New Jersey, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 arguing that the length of his pre-removal-period mandatory detention, pursuant to 8 U.S.C. § 1226(c), in the custody of Respondents Janet Napolitano, Eric H. Holder, Jr., John T. Morton, Christopher Shanahan, and Brian Elwood (collectively, "Respondents") and the Department of Homeland Security ("DHS"), has become constitutionally unreasonable such that it violates his due process rights under the fifth amendment.  Respondents filed an Answer, a declaration, and several exhibits, and Petitioner filed a Reply with additional exhibits.  For the reasons expressed in this Opinion, this Court holds that Petitioner's detention has become constitutionally unreasonable and grants a Writ of Habeas Corpus, directing the Immigration Judge to conduct a bond hearing pursuant to 8 U.S.C. § 1226(a)(2) to determine if he is a flight risk or danger to the community.

1

I.      BACKGROUND

Kelechi Nwozuzu, a native and citizen of Nigeria, challenges his detention in the custody of DHS at Monmouth County Correctional Facility. The facts are undisputed. Nwozuzu was born on March 8, 1977. He entered the United States in 1982, at the age of 4, along with his parents, one of whom was admitted as an F-1 nonimmigrant student. When Nwozuzu was 17 years old, his father became a naturalized citizen of the United States on October 4, 1994. Shortly thereafter, his mother was naturalized on November 15, 1994. When his parents were naturalized, he was not admitted to the United States as a lawful permanent resident. He became a lawful permanent resident in December 1998, when he was around 21 years old, although he initially applied for that status before his 18th birthday.

In 2004, Nwozuzu was convicted of marijuana possession and criminal possession of a loaded firearm in the third and fourth degrees in violation of New York Penal Law ("NYPL"). While he was serving his sentence for those crimes at York County Jail in Pennsylvania[1], he was placed in removal proceedings by U.S. Immigration and Customs Enforcement ("ICE"), a department of DHS, on June 17, 2005. He was detained by ICE on that same date, pursuant to 8 U.S.C. § 1226(a).

After having been detained for almost sixteen months, an Immigration Judge sitting in York, Pennsylvania terminated the removal proceeding against Nwozuzu, reasoning that he obtained derivative citizenship through his parents' naturalization while he was under the age of 18. As a citizen, rather than alien, the judge concluded that he could not be subject to removal.

---

[1]     It is not clear from the record whether Nwozuzu was already housed at York County Jail in connection with his New York crimes, or whether he was housed there by ICE once he was placed in removal proceedings. In either event, this fact does not bear on my analysis.

Following the judge's decision, Nwozuzu was released from custody on October 16, 2006.

Disagreeing with the judge's derivative citizenship ruling, ICE appealed to the Board of Immigration Appeals ("BIA"), arguing that only those children of naturalized parents who obtained their lawful permanent resident status prior to their 18th birthday are entitled to derivative citizenship. On September 10, 2008, the BIA issued a published opinion adopting ICE's legal argument and remanding to the Immigration Judge for proceedings consistent with its opinion. *See Matter of Nwozuzu*, 24 I&N Dec. 609 (BIA 2008). Nwozuzu filed a motion for reconsideration with the BIA, citing persuasive authority from the Second Circuit—*Ashton v. Gonzales*, 431 F.3d 95 (2d Cir. 2005)—which stated, in *dicta*, that a child of naturalized parents could obtain derivative citizenship through other objective evidence of lawful, permanent residence. Although granting Nwozuzu's request for reconsideration, the BIA affirmed its prior holding that Nwozuzu was not a citizen. The BIA's decision was dated June 12, 2009.

Meanwhile, on May 28, 2009, Nwozuzu was convicted of disorderly conduct in violation of NYPL section 240.20. Thereafter, on January 15, 2010, ICE re-arrested Nwozuzu and detained him a second time in light of the BIA's remand of the York, Pennsylvania Immigration Judge's derivative citizenship decision. This detention—like the first one from 2005 through 2006—was based on his 2004 firearms conviction. Unlike the first detention, however, ICE added the 2004 marijuana possession conviction as an additional basis for the detention. Per the drug conviction, Nwozuzu was detained pursuant to the 8 U.S.C. § 1226(c) pre-removal mandatory detention statute.

One month after being re-detained, on February 23, 2010, Nwozuzu appeared before an Immigration Judge in New York, New York. At that hearing, he requested an adjournment and the hearing was reset for April 14, 2010. On April 14, 2010, Nwozuzu requested a second

adjournment to July 14, 2010.  After this request was granted, the hearing was rescheduled for operational reasons to October 27, 2010 when he appeared before the New York Immigration Judge for a substantive ruling.  The judge ruled that, based on the BIA's 2009 decision reaffirming its holding that Nwozuzu did not obtain derivative citizenship, Nwozuzu was subject to removal.  At this point in time, Nwozuzu had been re-detained from January 15, 2010, through October 27, 2010—a total of eight and a half months—with six of those months (from the date of the first scheduled hearing, February 23rd, through July 14th) due to his own requests for adjournments.

Nwozuzu appealed the New York Immigration Judge's October 27, 2010 decision to the BIA.  Approximately six months later, on April 20, 2011, the BIA agreed with Nwozuzu that the judge committed an error and remanded.  Specifically, the BIA held that the judge failed to inform Nwozuzu of the availability of voluntary departure.  In light of the BIA's ruling, a remand hearing was set for May 17, 2011, but as Nwozuzu's then-attorney failed to appear, the hearing was reset for June 9, 2011.  At the June 9, 2011 remand hearing, the New York Immigration Judge ruled that Nwozuzu was not entitled to voluntary departure and, again, ordered him removed to Nigeria.  Nwozuzu timely appealed the remand ruling, reasserting his derivative citizenship claim, but this appeal was dismissed by the BIA on November 17, 2011.  All in all, these remand proceedings totaled approximately 12 months, with around one month due to Nwozuzu's attorney's failure to appear.

Shortly following BIA's dismissal of Nwozuzu's appeal on November 17, 2011, ICE contacted the Consulate of Nigeria and requested a travel document.  The Consulate did not provide the document, advising that a document would be issued once Nwozuzu's litigation was entirely completed.

4

On December 9, 2011, Nwozuzu filed a Petition for Review ("PFR") in the Second Circuit and, therewith, requested a stay of his removal pending the circuit's ruling. His PFR re-asserts his derivative citizenship claim. The PFR has been fully briefed since July 17, 2012 of this year, but has not yet been decided by the Second Circuit. However, the circuit has granted Nwozuzu's request for a stay of his removal.

While his PFR has been pending, ICE twice decided to continue Nwozuzu's detention through its administrative review process. However, to date, Nwozuzu has not been afforded an individualized bond hearing by an Immigration Judge. Nwozuzu filed the instant habeas petition on June 25, 2012, asking that this Court direct ICE to scheduled such an individualized bond hearing. The PFR process had added an another seven months to Nwozuzu's detention, bringing his total time in detention, prior to his habeas filing, to around 44 months, with 16 of those month during his first detention and the other 28 months during his second detention.

II.     JURISDICTION

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless ... [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). This Court has subject matter jurisdiction over the Petition under § 2241 because Petitioner was detained within its jurisdiction in the custody of DHS at the time he filed his Petition, *see Spencer v. Kemna*, 523 U.S. 1, 7 (1998), and he asserts that his prolonged detention under 8 U.S.C. § 1226(c) has become constitutionally unreasonable such

that it violates his due process rights under the fifth amendment. *See Diop v. ICE/Homeland Security*, 656 F.3d 221, 226 (3d Cir. 2011).

III.  DISCUSSION

Nwozuzo's central argument[2] advanced in his habeas petition is, simply put, that he has been detained in pre-removal custody[3] for so long that his fifth amendment due process rights have been violated.[4] In *Diop,* the Third Circuit held that the statute under which Nwozuzu is detained—8 U.S.C. § 1226(c)—"implicitly authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community."  656 F.3d at 231.  *Diop* explained:

---

[2]  Apart from Nwozuzu's argument, Respondents argue that Eric Holder, Janet Napolitano, John T. Morton, and Christopher Shanahan should be dismissed as parties to this action. According to Respondents, only Respondent Brian Elwood, the warden of Monmouth County Correctional Institution, should be named, as habeas actions are to proceed against the respondent who has immediate physical custody over the petitioner.  Petitioner concedes, and agrees that the above-named respondents other than Brian Elwood should be dismissed.  The Court will direct these respondents' dismissal in its Order accompanying this Opinion.

[3]  There is no dispute that Nwozuzu is now in pre-removal custody as the Second Circuit has stayed removal pending the outcome of his petition for review. *Accord Leslie v. Attorney Gen. of U.S.*, 678 F.3d 265, 270 (3d Cir. 2012).

[4]  Nwozuzu further raises his derivative citizenship argument in his petition.  Typically, I would address such a contention at the outset because "[u]ntil the claim of citizenship is resolved, the propriety of the entire proceeding is in doubt." *Poole v. Mukasey*, 522 F.3d 259, 264 (2d Cir. 2008) (quoting *Frank v. Rogers*, 253 F.2d 889, 890 (D.C. Cir. 1958)).  However, as noted, the question of Nwozuzu's derivative citizenship is currently pending before the Second Circuit.  *See Nwozuzu v. Holder*, Case No. 11-5089.  Because the Second Circuit is addressing his derivative citizenship claim, I do not address it here but focus solely on his request for an individualized bond hearing.

> [T]he Executive Branch must detain an alien at the beginning of removal proceedings, without a bond hearing—and may do so consistent with the Due Process Clause—so long as the alien is given some sort of hearing when initially detained at which he may challenge the basis of his detention. However, the constitutionality of this practice is a function of the length of the detention. At a certain point, continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community.

*Id.* at 232.

*Diop* made clear that the reasonableness inquiry is a fact-intensive one that depends on the circumstances of each individual case, and there are several factors courts are to consider when determining the reasonableness of a detention. *Id.* Courts should consider "a given individual detainee's need for more or less time, as well as the exigencies of a particular case." *Id.* at 234. For example, courts should take into account errors in the proceedings that cause unnecessary delay, or whether the Government requested additional time to compile evidence. Courts should also deduct delays attributable to the petitioner, but not those caused by the pursuit of bona fide legal challenges to removal. *Leslie v. Attorney Gen. of U.S.*, 678 F.3d 265, 269-70 (3d Cir. 2012). To consider the time related to a petitioner's bona fide legal challenges would unduly punish a petitioner for seeking to enforce his rights. *See id.* Moreover, where the petitioner does not prevail in a legal challenge, the petitioner is "responsible [only] for seeking relief, he is not responsible for the amount of time that such determinations may take." *Id.* at 271 (quoting *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003)). Finally, while the reasonableness inquiry is based on the specific facts of each case, the circuit noted in *Diop* that any detention exceeding five months is presumptively unreasonable; "the constitutional case for continued

detention without inquiry into its necessity becomes more and more suspect as detention continues past [this] threshold[ ]." *Diop*, 656 F.3d at 234.

In short, *Diop* lays out "a two step-process: a reviewing court must first determine that a detention has been unreasonably long, and following such a determination, must determine whether the unreasonable detention is necessary to fulfill § 1226's purposes …." *Leslie,* 678 F.3d at 269-70. Where the court concludes that detention has become unreasonably long, a reviewing court must grant the petitioner's writ of habeas corpus and either conduct an individualized bond hearing, *id.* at 271, or remand the case to the respondents and ICE to provide the petitioner with a bond hearing before an immigration judge within a short time frame. *See, e.g., Pierre v. Sabol,* Civ. Action No. 1:11-CV-2184, 2012 WL 1658293, *5 (M.D.Pa. May 11, 2012).

To be clear, my analysis focuses on Nwozuzu's second detention from January 15, 2010 to the present. While his first detention was based on the same 2004 firearm convictions that form the basis for his current detention pending removal, along with his 2004 marijuana conviction, Nwozuzu's petition to this Court was filed while he was detained at the Monmouth County Correctional Facility pursuant to the January 15, 2010 arrest. As his detention at this facility provides this Court jurisdiction over his petition, I find it appropriate to limit my inquiry to his detention there. Moreover, while his first detention in York, Pennsylvania, is certainly germane to his claim that he has been detained unreasonably long, the fact remains that Nwozuzu was released from that detention on October 16, 2006 and he remained out of ICE custody for three years before being arrested for the 2009 disorderly conduct offense in New York. Focusing

solely on Nwozuzu's second detention, as noted earlier, he has been detained by ICE for approximately 28 months[5] without the benefit of an individualized bond hearing.

Courts in this circuit have held that detentions exceeding 20 months are unreasonably long, and have granted petitioners' writs of habeas corpus asserting *Diop* claims on this basis. *See, e.g., Bautista v. Sabol,* NO. 3:12-CV-0596, 2012 WL 1899671, *1 (M.D.Pa. May 24, 2012) (26 months); *Pierre, supra* at *4 (20 months). Conversely, courts faced with detentions around one year in length have held that those detentions did not rise to the level of unreasonable delay, *see, e.g., Kot v. Elwood*, NO. CIV. 12-1720 (FLW), 2012 WL 1565438, *3 (D.N.J. May 2, 2012) (9 months between detention date and court ruling), and have dismissed those habeas petitions "without prejudice to the filing of a new [petition] in the event [the] detention becomes unreasonably prolonged within the meaning of *Diop* ...." *Bete v. Holder*, NO. CIV. 11-6405 (SRC), 2012 WL 1067747, *1 (D.N.J. Mar. 29, 2012) (12 months); *Espinoza-Loor v. Holder*, NO. CIV. 11-6993 (FSH), 2012 WL 2951642, *1 (D.N.J. Jul. 2, 2012) (13 months). In light of these precedents, that Nwozuzu has been detained for twenty-eights months suggests that he has been held unreasonably long.

I need not rest my ruling on the length of Nwozuzu's detention alone, however; the circumstances of Nwozuzu's detention further supports a finding of prolonged delay. While the parties dispute exactly how much of the delay is due to Nwozuzu's request for adjournments and appeals, the record makes clear that the bulk of his detention is due to governmental delay and/or errors. The time spanning from Nwozuzu's arrest on January 15, 2010, until his first hearing

---

[5] The parties provide differing calculations of Nwozuzu's detention period. I reach my own conclusion of the number of months Nwozuzu has been detained based on my independent review of the record.

before the New York Immigration Judge on October 27, 2010, equals eight and a half months. It is true that six of those months are due to Nwozuzu's own requests for adjournments, but the other two and a half of those months are attributable to ICE. While Nwozuzu timely appealed the New York Immigration Judge's October 27, 2010 decision to the BIA, the BIA did not rule upon his appeal for six months. As Nwozuzu was successful in his appeal, obtaining a remand to the Immigration Judge, and he is not responsible for the time the BIA took to decide the appeal, I do not penalize him for this delay. *Leslie*, 678 F.3d at 269-70. Moreover, another two months passed before the remand hearing took place, and only three weeks of that delay is due to Nwozuzu's request for adjournment.

Following the New York Immigration Judge remand hearing, Nwozuzu unsuccessfully appealed that ruling. He based this appeal on his derivative citizenship claim that had been previously adopted by the York, Pennsylvania Immigration Judge in the removal proceeding relating to this first detention. While Nwozuzu was not successful on this appeal, he raised a colorable claim already once adopted as legally valid and that is now pending before the Second Circuit. Thus, despite the BIA's rejection of his argument, I treat the time spent on this appeal as in pursuit of a bona fide legal argument as well as the time Nwozuzu spent pursuing his PFR based on the same derivative citizenship argument.

In this connection, I note that the central basis for the BIA's derivative citizenship ruling was that Nwozuzu did not obtain lawful permanent resident status prior to his 18th birthday, although he applied for that status before his birthday. The BIA based its decision on the following statutory language found in former section 321(a) of the Immigration and Nationality Act, 8 U.S.C. § 1432 (a) (1994), which applies retroactively to Nwozuzu's claim: "[to obtain derivative citizenship, the minor must be] residing in the United States *pursuant to a lawful*

10

*admission for permanent residence* at the time of the naturalization of the parent last naturalized …." *Matter of Nwozuzu*, 24 I&N Dec. at 610 (emphasis added). Contrary to the BIA's ruling, the Second Circuit has suggested, in *dicta*, that this language does not mandate that a minor have obtained lawful permanent residence status before his 18th birthday. Rather, the circuit has suggested, a showing of "some objective official manifestation" of permanent residency may suffice to demonstrate that the minor was lawfully admitted. *See Ashton v. Gonzales*, 431 F.3d at 98. Since the BIA's ruling was issued, a circuit split has developed on this precise legal question with the Ninth Circuit holding that the statute does not require lawful permanent resident status and the Eleventh Circuit, conversely, agreeing with the BIA's contrary interpretation of the statute. *See U.S. v. Juarez*, 672 F.3d 381, 388-89 (5th Cir. 2012) (discussing *U.S. v. Diaz-Guerrero*, 132 Fed.Appx. 739 (9th Cir. 2005) and *United States v. Forey–Quintero*, 626 F.3d 1323 (11th Cir. 2010)).

In sum, of the twenty-eight months Nwozuzu has spent in detention, I find that only seven of those months are due to his requests for adjournments and his unsuccessful appeal of the New York Immigration Judge's remand ruling while twenty-one months are due to his pursuit of bona fide legal arguments, governmental delay, and/or governmental errors. Keeping in mind that the typical removal proceeding should take between one-and-half and five months, *see Diop,* 656 F.3d at 233 (discussing *Demore v. Kim*, 538 U.S. 510, 529 (2003)), and recognizing that less than one-third of his twenty-eight month detention is attributable to his actions, I conclude that Nwozuzu is entitled to an individualized bond hearing at which ICE bears the burden of establishing that his detention is still warranted. *See Leslie v. Holder*, --- F.Supp.2d ----, 2012 WL 1068137, *4 (M.D.Pa. 2012) (discussing appropriate burden of proof in individualized bond hearing before an Immigration Judge).

11

Respondents argue that no bond hearing is warranted because Nwozuzu is unlikely to prevail in his PFR before the Second Circuit.  According to Respondents, the Second Circuit will likely conclude that he has not obtained derivative citizenship because "it has been clearly found by the [New York] immigration judge and the BIA that he is not eligible for relief from removal."  Resp. Answer at 6.  I am perplexed by this argument.  For one, the New York Immigration Judge did *not* rule on Nwozuzu's derivative citizenship claim but noted that he was bound by the BIA's decision in *Matter of Nwozuzu*.  *See* Guzman Decl., Exh. F at 2 ("The issue regarding his citizenship was resolved by the Board of Immigration Appeals.").

In addition, to argue that the Second Circuit will affirm the BIA simply because the BIA held so amounts to an *ipse dixit* conclusion.  I hope Respondents are not suggesting that circuit courts merely rubber stamp BIA rulings; to the contrary, the circuit courts engage in their own independent analyses, deferring to the agency's rulings only when consistent with their appellate review obligations under the *Chevron* doctrine.  *See Borrome v. Attorney General of U.S.,* --- F.3d ----, 2012 WL 2914111, *2-3 (3d Cir. 2012) (discussing when agency deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), is appropriate).  Moreover, as Respondents acknowledge, the Second Circuit granted Nwozuzu's request for a stay, which suggests that his claim has at least facial merit.  Indeed, in light of the Second Circuit's prior suggestion in *Ashton, supra,* and the Ninth Circuit's holding that lawful permanent residence status may not be required, and in light of the more recent pronouncements by the Eleventh Circuit that such status is required, it may well be that the Second Circuit will take the opportunity to clarify its position on this contentious legal question.  Hence I find Respondents' argument without merit.

IV.     CONCLUSION

This Court grants a Writ of Habeas Corpus and directs that an Immigration Judge must provide Petitioner with an individualized bond hearing, pursuant to 8 U.S.C. § 1226, within ten (10) days of the date of this Opinion.  An Order consistent with this Opinion shall follow.


Dated: August 16, 2012

   /s/ Freda L. Wolfson<br>
Freda L. Wolfson, U.S.D.J.